1

2

3

4

5

6

7

8                          **UNITED STATES DISTRICT COURT**

9                         **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   LISA ANDERSON,                              CASE NO. 10 CV 2216 MMA (AJB)

12                            Plaintiff,         **ORDER:**

13                                               **(1) GRANTING MOTION TO
                                                 PROCEED *IN FORMA PAUPERIS*;**
14
     vs.                                         [Doc. No. 9]
15
                                                 **(2) *SUA SPONTE* DISMISSING
16                                               FIRST AMENDED COMPLAINT
                                                 WITH LEAVE TO AMEND FOR
17                                               FAILURE TO STATE A CLAIM;
                                                 and**
18   STATE OF CALIFORNIA, et al.,
                                                 **(3) DENYING MOTION FOR
19                           Defendants          LEAVE TO FILE SECOND
                                                 AMENDED COMPLAINT AS
20                                               MOOT**

21                                               [Doc. No. 10]

22          On October 26, 2010, Plaintiff Lisa Anderson and her daughter, Elise J. Anderson, filed a *pro*

23   *se* complaint alleging intentional discrimination by public social services [Doc. No. 1], along with a

24   Motion to Proceed *In Forma Pauperis* ("IFP") pursuant to 28 U.S.C. § 1915(a) [Doc. No. 2].  Only

25   Lisa Anderson signed the complaint. On October 27, 2010, the Court denied Plaintiff's Motion to

26   Proceed IFP because the Court could not determine whether Plaintiff was indigent within the meaning

27   of the IFP statute, and informed Plaintiff Lisa that she does not have authority to appear as an attorney

28   on her daughter Elise's behalf [Doc. No. 4].  On November 16, 2010, Plaintiff Lisa Anderson filed

a First Amended Complaint [Doc. No. 6], naming only herself as a plaintiff, along with a second Motion to Proceed IFP [Doc. No. 7].  The Court again denied Plaintiff's motion on December 6, 2010, finding that Plaintiff was not indigent with the meaning of the IFP statute based on the information presented [Doc. No. 7].  Plaintiff was given until January 10, 2011, to submit an amended motion to proceed IFP or pay the required filing fee.  On January 10, 2011, Plaintiff submitted a third Motion to Proceed IFP [Doc. No. 9], along with a motion for leave to file a Second Amended Complaint [Doc. No. 10].

For the reasons set forth below, the Court **GRANTS** Plaintiff's motion for leave to proceed IFP, and **DISMISSES** Plaintiff's complaint without prejudice and with leave to amend.

### MOTION TO PROCEED IFP

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $350.  *See* 28 U.S.C. § 1914(a).  An action may proceed despite a plaintiff's failure to prepay the entire fee only if the plaintiff is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999).  "To proceed in forma pauperis is a privilege not a right."  *Smart v. Heinze*, 347 F.2d 114, 116 (9th Cir. 1965).

When presented with an application to proceed in forma pauperis, a court must first determine if the applicant satisfies the economic eligibility requirement of 28 U.S.C. § 1915(a).  *See Franklin v. Murphy*, 745 F.2d 1221, 1226 n. 5 (9th Cir. 1984).  Section 1915(a) does not require an applicant to demonstrate absolute destitution.  *See Adkins v. E.I. Du Pont de Nemours & Co.*, 335 U.S. 331, 339 (1948).

On January 10, 2011, Plaintiff filed a third Motion to Proceed IFP, which indicates that her monthly expenses are approximately equal to her monthly income of $929.  In addition to rent and storage fees, Plaintiff has now indicated that her monthly food expenses total $180, and that bills and miscellaneous expenses total approximately $100 per month, bringing her monthly expenses to approximately $913.  The Court finds this new information cures the deficiencies outlined in the

1    Court's December 6, 2010 Order, and that Plaintiff has now satisfied the IFP requirements.

2    Accordingly, the Court **GRANTS** Plaintiff's Motion to Proceed IFP [Doc. No. 9].

3                        SCREENING PURSUANT TO 28 U.S.C. § 1915(E)(2)

4    **I. Legal Standard**

5          When a plaintiff seeks to proceed IFP, the complaint is subject to mandatory screening and the

6    Court must order the *sua sponte* dismissal of any case it finds "frivolous, malicious, failing to state

7    a claim upon which relief may be granted, or seeking monetary relief from a defendant immune from

8    such relief."  28 U.S.C. § 1915(e)(2)(B); *Calhoun v. Stahl*, 254 F.3d 845, 845 (9th Cir. 2001) ("[T]he

9    provisions of 28 U.S.C. § 1915(e)(2)(B) are not limited to prisoners.").

10         "[W]hen determining whether a complaint states a claim, a court must accept as true all

11   allegations of material fact and must construe those facts in the light most favorable to the plaintiff."

12   *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000).  In addition, the Court has a duty to liberally

13   construe a *pro se's* pleadings.  *Id.*  In giving liberal interpretation to a *pro se* complaint, however, the

14   court may not "supply essential elements of claims that were not initially pled."  *Ivey v. Board of*

15   *Regents of the University of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).  For the reasons set forth

16   below, the Court concludes Plaintiff's First Amended Complaint ("FAC") fails to state a claim upon

17   which relief may be granted.

18   **II.  Summary of Plaintiff's Complaint**

19         Plaintiff's FAC is difficult to comprehend, and it is unclear when many of the alleged events

20   occurred because they are undated and are not in chronological order.  However, Plaintiff's FAC

21   appears to describe numerous encounters over the course of approximately 10 years between herself,

22   her daughter Elise Janine Anderson,[1] employees of the San Diego Regional Center ("SDRC"),

23   Walden's Family Mental Health Services ("Walden's"), the Office of Human Rights and Advocacy

24   ("OHRA"), and Elise's foster parents.  Based on these events, Plaintiff purports to allege that she was

25   discriminated against by Defendants on the basis of her race, mental disability, and gender [Doc. No.

26   6].

27   / / /

28
_____

[1]As noted in the Court's December 6, 2010 Order, Elise is not a minor [Doc. No. 7].

1    The FAC primarily describes Defendants' alleged interference with Plaintiff's desire to see,

2    talk to, and care for her daughter Elise. For example, the FAC indicates that in 1999, Elise was placed

3    in a group home while in state custody, and Plaintiff was able to visit Elise until a group of social

4    workers made deals to "cut out" Plaintiff from her daughter's life [FAC ¶¶ 1, 4–5]. Additionally,

5    Plaintiff alleges that on one occasion she attempted to pray with Elise and social workers subsequently

6    threatened to call the police if Plaintiff did not leave the group home facility [FAC ¶ 11]. Plaintiff

7    alleges that employees of SDRC interrupted prayers on other occasions, terminated visits with

8    Plaintiff's daughter without Plaintiff's knowledge, monitored phone calls, and forced Elise to hang

9    up on Plaintiff on one occasion[2] [FAC ¶¶ 10, 13, 15–18, 22]. The FAC also alleges that in 2004,

10   Defendant Estella Gonzales disconnected Elise's phone and may have interfered with Plaintiff's

11   ability to visit Elise [FAC ¶ 43]. Additionally, while Plaintiff was talking to Elise on the phone on one

12   occasion, she could hear the "sound of a clamorous pan" and Defendants Estella and Ruben in the

13   background [FAC ¶ 47]. Similarly, the FAC alleges Defendants Lourdes and Jesse tried to prevent

14   Plaintiff from contacting Elise [FAC ¶ 57]. When Plaintiff contacted the Office of Human Rights and

15   Advocacy Services regarding her desire to speak to and see her daughter, she was told that her

16   daughter had "privacy rights not to talk with her" and that information about Elise would not be

17   divulged to Plaintiff [FAC ¶ 67].

18   Plaintiff and her daughter are African-American, and a number of paragraphs in the FAC

19   describe statements or conversations concerning race. For example, Plaintiff alleges that in 2007,

20   Defendant Estella "pointed out a finger toward [Elise's] black legs with a frown on her face" and

21   "talked about her black skin" on another occasion [FAC ¶¶ 39, 48]. Plaintiff indicates that Elise once

22   said "she did not want to be black," and Elise had little contact with blacks or knowledge of black

23   history [FAC ¶¶ 31, 46]. Plaintiff alleges that on one occasion when she came to "the home," a

24   woman "called her a nigger" [FAC ¶ 66]. The FAC, however, does not identify who used this ethnic

25   slur, nor if the statement was connected to Defendants' alleged interference with Plaintiff's ability to

26   see and communicate with her daughter.

27

28        [2]It appears these events likely occurred during the years 1999–2000. The FAC also alludes
to another incident where Plaintiff's visitation rights were taken away and she was "forced to leave
the services," but it is unclear when this incident took place [FAC ¶ 38].

10cv2216

1    In addition, the FAC describes Plaintiff's concern for her daughter's well-being, and is replete

2    with descriptions of harm allegedly suffered by Elise.  For example, the FAC alleges that in 1999,

3    Plaintiff noticed Elise's arms were swollen and when Plaintiff inquired, Defendants told her that Elise

4    had harmed herself and was placed on suicide watch [FAC ¶ 8].  Additionally, Plaintiff indicates that

5    Elise sounded "sad, lonely, and afraid on the phone" [FAC ¶ 17], and that in 2004, Elise had a scar

6    on her forehead and puncture wounds on her knuckles [FAC ¶ 23].  Plaintiff also raises concern

7    regarding the condition of her daughter's abdominal area [FAC ¶ 33] and the food that she was eating

8    while under Defendants' care [FAC ¶ 63].

9    **III.  SUA SPONTE SCREENING**

10       **a.    Standing**

11       As a preliminary matter, the Court considers whether Plaintiff has standing to assert her

12   discrimination claims, as much of the conduct alleged concerns Plaintiff's daughter Elise, rather than

13   Plaintiff.  In order to maintain a lawsuit, an individual must have standing to do so.  *See Allen v.*

14   *Wright*, 468 U.S. 737, 750 (1984).  The standing doctrine addresses the question of "whether the

15   litigant is entitled to have the court decide the merits of the dispute."  *Warth v. Seldin*, 422 U.S. 490,

16   498 (1975).  In order to have standing, the plaintiff must have suffered an "injury in fact," meaning

17   that a *legally protected interest*, which is (a) concrete and particularized, and (b) actual or imminent,

18   not conjectural or hypothetical, has been invaded.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555,

19   560–61 (1992).  Second, there must be a causal connection between the injury and the conduct

20   complained of.  Third, it must be likely that the injury will be redressed by a favorable decision.  *Id.*

21       To the extent Plaintiff alleges Defendants discriminated against her, she must articulate the

22   specific unlawful actions by Defendants that invaded her legally protected interests, not those of her

23   daughter.[3]  Accordingly, Plaintiff cannot raise concerns regarding the quality of care Elise received

24   because Plaintiff lacks standing do to so.  Further, to the extent Plaintiff's claims stem from being

25   denied communication with or information about her daughter, an adult, it is not clear that Plaintiff

26   has been denied a legally protected interest.

27   / / /

28

---

[3]Plaintiff has not established any ground that would allow her to pursue alleged injuries suffered by Elise.

10cv2216

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**b.      Statute of Limitations**

In order to maintain an action, it must be timely filed within the statute of limitations.  Many courts have noted that claims brought under the Rehabilitation Act and Title II of the ADA are best characterized as personal injury actions and are therefore subject to the two-year statute of limitations period set forth in Cal. Code. Civ. P. § 335.1.  *See Donoghue v. County of Orange*, 848 F.2d 926, 930 (9th Cir. 1987); *Kemp v. Regents of Univ. of Cal*, Slip Copy, 2010 WL 2889224 (N.D. Cal. 2010). Additionally, the Ninth Circuit has indicated that the one-year state statute of limitations applicable to claims brought under § 1983 is applicable to claims brought under § 2000d.  *Taylor v. Regents of Univ. of Cal.*, 993 F.2d 710, (9th Cir. 1993).  Because many of the allegations in the FAC are undated and are not in chronological order, it is difficult to determine whether Plaintiff's claims have been timely filed.  In addition, many of the incidents alleged appear to have occurred between one and eleven years prior to the date Plaintiff filed her initial complaint, which would put them well outside the limitation periods.

**c.      Disability Discrimination Claims**

In her "Statement of Claim," Plaintiff has alleged that Defendant Risley of OHRA intentionally discriminated against her by reason of her mental disability [FAC ¶ 70], and that all other named defendants caused Plaintiff injuries [FAC ¶ 73]. The Court construes these allegations as alleging discrimination on the basis of mental disability under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132 and the Rehabilitation Act of 1973, § 504, 29 U.S.C.A. § 794.

*i.      Americans with Disabilities Act*

In order to state a claim under Title II of the ADA, Plaintiff must allege that:  (1) she has a disability;[4] (2) she is otherwise qualified to participate in or receive the benefit of some public entity's[5]

_____

[4]The ADA defines a "qualified individual with a disability" to include anyone with a disability "who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."  42 U.S.C. § 12131(2).

[5]The ADA broadly "defines 'public entity' as 'any State or local government [and] any department, agency, special purpose district, or other instrumentality of a State or States or local government.'"  *Armstrong v. Wilson*, 124 F.3d 1019, 1023 (9th Cir. 1997) (quoting 42 U.S.C. § 12131(1)). "Public entity" as defined within the statute does not include individuals.  42 U.S.C. § 12131(1).

10cv2216

services, programs, or activities; (3) she was excluded from participation in or denied the benefit in question, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of her disability. *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004). Because the ADA prohibits discrimination in the services, programs, or activities of a public entity, the proper defendant is the public entity or an official acting in his or her official capacity. *Everson v. Leis*, 556 F.3d 484, 501 n. 7 (6th Cir. 2009); *see also Caesar v. Horel*, 2010 WL 4393894, at *7 (N.D. Cal. Oct. 29, 2010) ("The proper defendants to Plaintiff's disability discrimination claims are the public entities that allegedly denied him equal access to their programs").

Plaintiff has alleged that she is a "qualified individual who has mental illness" [FAC p. 2] and the Court construes the FAC as indicating that SDRC and Walden's are "public entities" [FAC p. 2]. However, even assuming that Plaintiff is a "qualified individual with a disability" and that SDRC and Walden's are "public entities" for purposes of the ADA, the Court finds Plaintiff has failed to properly allege a claim for discrimination on the basis of mental disability under Title II of the ADA.

First, it is unclear whether Plaintiff is asserting a claim against Defendants in their individual or official capacities. To the extent Plaintiff wishes to maintain a Title II claim, she must provide allegations of wrongful conduct by Defendants in their official capacities. Second, Plaintiff has not shown that she is qualified to participate in or receive the benefit of the "public entities" named in the FAC. Although the FAC indicates that Elise was a "consumer" of SDRC and that Elise has some connection to Walden's through her foster parents [FAC pp. 1–3], there are no factual allegations regarding Plaintiff's connection to the entities or that she is entitled to receive benefits from them.

Lastly, Plaintiff has failed to show that she was excluded or denied services, programs, or activities *because of* her mental disability. Plaintiff has alleged interference with her desire to see Elise and speak to her over the phone because of loud noises, force, or threats [FAC ¶¶ 13, 15–17, 38, 43, 47, 57]. However, none of the allegations, even liberally construed, give rise to an inference that this interference was because of Plaintiff's mental disability.[6] Based on the foregoing, the Court finds

---

[6]The Court notes that Plaintiff's mental disability is not mentioned in the "Facts" section of the FAC. The only potential reference to Plaintiff's mental disability in this section is found in Paragraph 47, which indicates that Elise told Plaintiff that "[P]laintiff Lisa was sick" and that Elise did not want to talk to her.

1    Plaintiff has failed to allege the elements required to state a claim for discrimination on the basis of

2    disability under the ADA.

3                              ii.        *Rehabilitation Act*

4            Section 504 of the Rehabilitation Act of 1973 is a general civil rights provision "to prevent

5    discrimination against all handicapped individuals . . . in employment, housing, transportation,

6    education, health services, or any other Federally-aided programs." *Alexopulos v. San Francisco*

7    *Unified Sch. Dist.*, 817 F.2d 551, 554 (1987).  Section 504 provides: "No otherwise qualified

8    individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the

9    participation in, be denied the benefits of, or be subjected to discrimination under any program or

10   activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).

11           To state a claim under the Rehabilitation Act of 1973, § 504, 29 U.S.C.A. § 794, plaintiff must

12   allege that "(1) [s]he is an individual with a disability; (2) [s]he is otherwise qualified to receive the

13   benefit; (3) [s]he was denied the benefits of the program solely by reason of [her] disability; and (4)

14   the program receives federal financial assistance." *Duvall v. County of Kitsap*, 260 F.3d 1124, 1135

15   (9th Cir. 2001).  Whereas the ADA applies only to public entities, the Rehabilitation Act proscribes

16   discrimination by all federally-funded programs.

17           As previously noted, the FAC is devoid of any facts indicating Plaintiff was denied any

18   benefits by reason of her disability, or that she was qualified to receive certain benefits.  The Court

19   therefore finds that Plaintiff has not alleged sufficient facts to state a claim for discrimination under

20   the Rehabilitation Act.

21           **d.        Racial Discrimination Claims**

22           Based on Plaintiff's "Statement of Claim" [FAC p. 12], the Court further construes Plaintiff's

23   FAC as alleging racial discrimination under the Civil Rights Act of 1964, § 601, 42 U.S.C.A. § 2000d.

24   Section 2000d, which is part of Title VI of the 1964 Civil Rights Act, forbids any person or institution

25   which receives federal funds from discriminating on the basis of race, color, or national origin.  42

26   U.S.C.A. § 2000d.  For a Title VI claim, the injury arises when a person is excluded from participation

27   in, denied the benefits of, or subjected to discrimination under any program or activity receiving

28   federal funding because of race, color or national origin.  *See* 42 U.S.C. § 2000d; *see also Epileptic*

1   *Foundation v. City and County of Maui*, 300 F. Supp. 2d 1003 (D. Haw. 2003).  A complaint need

2   only allege that the defendant is engaging in discrimination.[7]  *Fobbs v. Holy Cross Health Sys.*, 29

3   F.3d 1439, 1447 (9th Cir. 1994).

4          Although the FAC describes exchanges where race was discussed and incidents where Plaintiff

5   was allegedly prevented from communicating with her daughter, there is no meaningful connection

6   between Plaintiff's race, the discussion of race, and the way Plaintiff was allegedly treated by the

7   Defendants.  Specifically, it is not clear from the FAC that Plaintiff was denied any benefits or

8   prevented from communicating with her daughter *because of* her race.  For example, although the

9   FAC indicates that Defendant Estella made comments about the color of Elise's skin and frowned

10  [FAC ¶¶ 46, 48], there are no facts that indicate Defendant Estella prevented Plaintiff from

11  communicating with her daughter or otherwise discriminated against her because of her race.  For this

12  reason, the Court finds the FAC, as currently pled, fails to state a claim for race discrimination under

13  Title VI of the Civil Rights Act.

14          **e.      Gender Discrimination Claims**

15          Similarly, the FAC fails to state a cognizable claim for gender discrimination.  There are no

16  factual allegations that identify how Defendants' alleged conduct is connected to Plaintiff's gender,

17  or that males were provided services, opportunities, or access that Plaintiff was denied because she

18  is female.  Instead, the FAC only contains conclusory statements that Defendants engaged in

19  discriminatory practices because of Plaintiff's race, disability, and gender [FAC p. 14].  Without more,

20  Plaintiff has failed to state a claim for gender discrimination.

21  **III. Leave to Amend**

22          For the reasons set forth above, the Court finds that Plaintiff's FAC fails to state a claim upon

23  which relief may be granted and is therefore subject to dismissal pursuant to 28 U.S.C. §

24  1915(e)(2)(b).  In this circuit, "[a] pro se litigant must be given leave to amend his or her complaint

25

26

27          [7]Plaintiff must allege both that the defendant is an entity engaging in racial discrimination and
    that it is receiving federal funding.  *Fobbs v. Holy Cross Health Sys. Corp.*, 29 F.3d 1439, 1447 (9th
    Cir. 1994), *overruled in part on other grounds by Daviton v. Columbia/HCA Healthcare Corp.*, 241

28  F.3d 1131 (9th Cir. 2001).  As the Court previously noted, it is unclear in what capacity Plaintiff is
    suing each Defendant.

unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988) (citing *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987)); *see also Lopez v. Smith*, 203 F.3d 1122, 1127–29 (9th Cir. 2000) (§ 1915(e)(2)(B)(ii)'s mandated dismissal of an IFP complaint allows a district court to grant leave to amend); *Waters v. Young*, 100 F.3d 1437, 1441 (9th Cir. 1996) ("As a general matter, this court has long sought to ensure that pro se litigants do not unwittingly fall victim to procedural requirements that they may, with some assistance from the court, be able to satisfy."). Accordingly, the Court **DISMISSES** the complaint without prejudice. Plaintiff may file a Second Amended Complaint, consistent with this Order, that addresses the deficiencies identified above. Plaintiff is advised, however, that if her amended complaint fails to cure the pleading deficiencies noted above, her complaint may be dismissed with prejudice and without further leave to amend.

**CONCLUSION AND ORDER**

For the reasons set forth above, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion to proceed IFP pursuant to 28 U.S.C. § 1915(a) is **GRANTED** [Doc. No. 9];

2.    Plaintiff's FAC is **DISMISSED** without prejudice and with leave to amend. Plaintiff is **GRANTED** thirty (30) days from the date this Order is Filed in which to file a Second Amended Complaint that cures the deficiencies of pleading noted above. Plaintiff's Second Amended Complaint must be complete in itself without reference to the superseded pleading. *See* S.D. CA. CIV.LR. 15.1. Defendants not named and all claims not re-alleged in the Second Amended Complaint will be considered waived. *See King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987).

3.    The Court **DENIES** Plaintiff's Motion for Leave to File a Second Amended Complaint **AS MOOT** [Doc. No. 10], because the Court dismisses Plaintiff's FAC with leave to amend.

**IT IS SO ORDERED.**

DATED: March 30, 2011

Hon. Michael M. Anello
United States District Judge

- 10 -

10cv2216